**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 22-14102-CV-MIDDLEBROOKS

DONALD J. TRUMP,

    Plaintiff,

v.

HILLARY R. CLINTON, et al.,

    Defendants.

_____/

## ORDER ON MOTION FOR INDICATIVE RULING

On May 12, 2023, Special Counsel John H. Durham submitted his *Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns* ("Durham Report"). Plaintiff and his lawyers tout the Report as "newly discovered evidence" and they now ask me to reconsider my previous rulings. But far from "seismically alter[ing] the legal landscape of this case" (DE 331 at 6), the Durham Report changes nothing. Nor could it really. Even if the Durham Report uncovered the sort of vast conspiracy alleged by Plaintiff (it plainly did not), it would not change the many *legal* conclusions I made in the Order dismissing Plaintiff's lawsuit. And whatever the Durham Report can be said to have uncovered, for purposes of this case, it does not change my findings that Movants acted in bad faith in bringing this lawsuit and that this case exemplifies Mr. Trump's history of abusing the judicial process. Therefore, for the reasons set forth below, Plaintiff and his lawyers' Motion for Indicative Ruling Based Upon New Evidence is denied.[1]

---

[1] The Motion for Indicative Ruling was filed on July 27, 2023 by Plaintiff Donald J. Trump and his lawyers, Alina Habba; Michael T. Madaio; Habba, Madaio, & Associates; Peter Ticktin; Jamie Alan Sasson; and The Ticktin Law Group. (DE 331). The Motion is fully briefed. (DE 332; DE 333; DE 334; DE 336).

I.  **BACKGROUND**

On September 8, 2022, in a 65-page Order, I dismissed Plaintiff's Amended Complaint with prejudice as to all non-Federal Defendants and without prejudice as to the United States. (DE 267) ("MTD Order").[2] Given the frivolous nature of the case, I reserved jurisdiction to adjudicate issues pertaining to sanctions. On November 10, 2022, I granted Defendant Dolan's Motion for Rule 11 sanctions. (DE 284) ("First Sanctions Order"). In the First Sanctions Order, I imposed an over $66,000 sanction on Plaintiff's lawyers, Alina Habba; Michael T. Madaio; Habba Madaio & Associates; Peter Ticktin; Jamie Alan Sasson; and The Ticktin Law Group. On January 19, 2023, I granted eighteen other Defendants' Joint Motion for Sanctions under this Court's inherent powers. (DE 302) ("Second Sanctions Order"). In the Second Sanctions Order, I imposed a nearly $938,000 sanction on Plaintiff Donald J. Trump and Plaintiff's lead attorney, Alina Habba and Habba Madaio & Associates. Between late 2022 and February 2023, Plaintiff and his sanctioned lawyers ("Movants") appealed all three Orders to the Eleventh Circuit.

Pursuant to 28 C.F.R. § 600.8(c), Special Counsel Durham submitted his Report to United States Attorney General Merrick Garland on May 12, 2023. Durham Report at 1. § 600.8(c) provides that "[a]t the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c). On May 15, 2023, Attorney General Garland made public an unclassified portion of the Report when he transmitted it to Congress. Ltr. from AG Garland to Senate and House Judiciary Committees (May 15, 2023), https://www.justice.gov/sco-durham.

---

[2] See the MTD Order at 1-3 for a summary of Plaintiff's allegations.

United States Attorney General Barr appointed Mr. Durham as special counsel in February 2020 and in October 2020 expanded his mandate to:

> [I]nvestigate whether any . . . person or entity violated the law in connection with the intelligence, counter-intelligence, or law-enforcement activities directed at the 2016 presidential campaigns, individuals associated with those campaigns, and individuals associated with the administration of President Donald J. Trump, including but not limited to Crossfire Hurricane and the investigation of Special Counsel Robert S. Mueller, III.

Durham Report at 1-2 (citing Office of the Att'y Gen., Order No. 4878-2020, Appointment of Special Counsel to Investigate Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns ¶ (f) (Oct. 19, 2020)). Special Counsel Durham did not "interpret[] the Order as directing [the Special Counsel's Office] to consider the handling of the investigation into President Trump opened by the FBI on May 16, 2017." *Id*. at 2 n7. Instead, he focused on the FBI's opening and handling of the Crossfire Hurricane Investigation. *Id*. at 7-8.

Movants requested that the Eleventh Circuit take judicial notice of the Durham Report or, in the alternative, stay the appeal pending an indicative ruling from this Court. The Eleventh Circuit granted the latter.

Movants now seek an indicative ruling from this Court that—given the Durham Report—it would "grant the Rule 60(b) motion if the Eleventh Circuit remands jurisdiction of this case." (DE 331 at 7). Specifically, that "this Court [would] vacate its prior order to dismiss pertaining to the two RICO claims and claim for injurious falsehood against [the non-federal] Defendants . . . and the two sanctions orders." (*Id.* at 8).

## II.   LEGAL STANDARD

"A party proffering newly discovered evidence may obtain an indicative ruling from a district court concerning relief from judgment pending appeal." *Franken v. Mukamal*, 449 F. App'x 776, 779 n.2 (11th Cir. 2011). In such cases, Rule 62.1 explains that a district court may

3

"(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(1)-(3).

As is relevant here, Rule 60(b) provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or]
>
>     \*\*\*
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(2), (6). The Eleventh Circuit has in turn established a five-part test for parties seeking relief under Rule 60(b)(2):

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; **and** (5) the evidence must be such that a new trial would probably produce a new result.

*Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003) (emphasis added).

Moreover, "'[n]ewly discovered evidence' under Rule 60(b) refers to evidence of facts in existence *at the time of the trial* of which the aggrieved party was excusably ignorant." *N.L.R.B. v. Jacob E. Decker & Sons*, 569 F.2d 357, 364 (5th Cir. 1978) (emphasis added) (citation omitted)[3]; *see also Smith v. Fla. Agric. & Mech. Univ. Bd. of Trustees*, 687 F. App'x 888 (11th Cir. 2017) (citing same). Crucially, "'[a] motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met.' Finality is a virtue in the law."

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Waddell,* 329 F.3d at 1309 (citation omitted).

Rule 60(b)(6), the catchall provision, "is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022). In other words, "clause (6) and clauses (1) through (5) are mutually exclusive." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988). Accordingly, "'extraordinary circumstances' are required to bring the motion within the 'other reason' language" of Rule 60(b)(6). *Id.* (citation omitted).

### III.  DISCUSSION

The Durham Report is *not* "newly discovered evidence" because a party cannot discover something that did not exist at the time of the trial, or here, the final Orders. Movants also do not point to a single fact in the Report that, even with due diligence, they failed to discover. To the extent that Plaintiff can pluck out arguably favorable-sounding facts from the Report that may have some conceivable tie into his conclusory allegations, that doesn't affect the many *legal* conclusions set forth in the MTD Order. I highlight some here:

1. "Plaintiff's Amended Complaint is a quintessential shotgun pleading, and '[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings.' (*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)." (MTD Order at 7).

2. "Because the United States is the proper party to this action, Plaintiff was required to exhaust his administrative remedies before bringing his claim in this Court under the FTCA." (*Id.* at 14).

3. "Plaintiff has not alleged that Defendants 'aimed' any conduct at Florida or could reasonably have anticipated that Plaintiff would be harmed in Florida, particularly in light of the fact that Plaintiff was a resident of New York at the time of the occurrences giving rise to Plaintiff's claims. Knowledge that Florida is a state in the United States does not equate to knowledge that Defendants' actions will have consequences in Florida." (*Id.* at 20).

4. "[Plaintiff's] allegations compel only one logical conclusion: that Plaintiff was aware of the factual basis underlying his RICO claims since at least October 2017, if not earlier," thus placing his RICO claims outside of the 4-year statute of limitations. (*Id.* at 26).

5. "[T]he Government has not instituted any proceedings to punish a RICO violation, nor any RICO predicate act relating to the circumstances giving rise to this litigation. Without any government proceeding initiated to prevent, restrain, or

5

punish a RICO violation or RICO predicate act, there can be no statutory tolling under [Plaintiff's Clayton Act] theory." (*Id*. at 28).

6. "Plaintiff misunderstands the law . . . . Plaintiff's concession that he was damaged beginning in September 2017 means that the clock began ticking despite that Plaintiff did not yet appreciate the 'true extent' of his injuries." (*Id*. at 29-30).

7. "Obstruction of justice does not supply Plaintiff with a valid predicate act because Plaintiff does not identify any 'official proceedings' that Defendants allegedly obstructed." (*Id*. at 31).

8. "Even accepting Plaintiff's allegations as true, perjury and falsifying documents are not RICO predicate acts." (*Id*. at 33).

9. "Even if DNS data is a trade secret, Plaintiff has not plausibly alleged that he has a protectable interest in it. DNS data is public . . . . " (*Id*. at 36).

10. "Nor does "misreporting" payments to Fusion GPS in campaign finance reports qualify as wire fraud. Violations of federal campaign finance laws are not RICO predicate offenses. *See Ayres v. Gen. Motors Corp.*, 243 F.3d 514, 522 (11th Cir. 2000) . . . . " (*Id*.).

11. "These investigations, therefore, do not amount to a 'judicial proceeding' because none is a civil or criminal lawsuit, and '[a]n action for malicious prosecution . . . [can] never occur outside the context of *litigation*.' *Fischer v. Debrincat*, 169 So.3d 1204, 1209 (Fla. 4th DCA 2015) (emphasis added)." (*Id*. at 51).

12. "That Plaintiff did not know the name of the 'computer scientist' or 'computer expert' who allegedly obtained the DNS data does not excuse his failure to investigate and identify the offender during the limitations period. *See id.* The CFAA claim is thus time barred." (*Id*. at 54).

13. "So too is Plaintiff's claim under the Stored Communications Act ('SCA') time barred." (*Id*. at 57).

14. In dismissing Count X, I explained that "[t]here is no free-standing independent cause of action in Florida for agency. *See, e.g., Barabe v. Apax Partners Eur. Managers, Ltd.*, 359 F. App'x 82, 84 (11th Cir. 2009)." (*Id*. at 62). I further explained that "Count X reflects the high-water mark of shotgun pleading and is accordingly dismissed." (*Id*.).

15. "Counts XI through XVI purport to state claims . . . for Respondeat Superior/Vicarious Liability. But under Florida law, respondeat superior, like agency, is a doctrine of liability, not itself a cause of action. *See Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So.2d 1243, 1244 (Fla. 1st DCA 1995)." (*Id*.).

I struggle to even imagine anything that the Durham Report *could* say to warrant a change in any of those conclusions—the sum of which foreclosed Plaintiff's claims and led to sanctions. And after reading all 306 single-spaced pages of the Durham Report, I am not convinced that anything it *does* say merits the extraordinary relief of granting a Rule 60(b) motion.

### A. PRELIMINARY ISSUES

Three issues merit a preliminary discussion. First, the role of judicial notice. Defendants, largely in response to Movants' framing of their Motion, argued that the Court must, as a threshold matter, take judicial notice of the Durham Report. I don't think that's right. As far as I can tell, none of the cases cited by the Parties hold as much. This confusion seems to have arisen from the procedural posture of the appeal, where judicial notice might be the only vehicle for the Eleventh Circuit to consider the Durham Report in the first instance.

Here, we have Rule 60(b)(2). And given that Plaintiff is seeking to turn back the clock at the motion to dismiss stage, imposing the constrained judicial notice lens makes little sense. Otherwise, nearly every Rule 60(b)(2) Motion would be accompanied by a request for judicial notice and that is simply not the case. In my view, Movants went about this Motion in the wrong way. Notwithstanding, for purposes of efficiency, and because it appears that the Eleventh Circuit prefers to have this Court opine on the impact of the Durham Report, I reach the Rule 60(b) motion regardless of judicial notice.

That being said, I note that no amended complaint has been proposed, bringing me to the second issue. While seemingly not required and certainly not dispositive, Movants' failure to file a proposed amended complaint makes it increasingly difficult to assess the impact of the Durham Report. The Durham Report, and its 306 single-spaced pages, is not a substitute for a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 258 (5th Cir. 2003) ("As they did in crafting

7

their complaint, the plaintiffs [in their Rule 60(b)(2) motion] simply inundated the district court with an avalanche of material in the hopes that the court would, on its own, connect the dots between any bad act found in the material and allegations related to the single claim against [the defendants] in this case. This is not the court's burden.").

This problem is compounded by the fact that the Motion is one big smokescreen. Take the following excerpt:

> Specifically, the Durham Report exposes Defendants' conduct in working together to formulate a false story of alleged Trump/Russia collusion. Defendant Clinton, and those working closely with her, "*were seeking in 2016 to promote a false or exaggerated narrative to the public and to U.S. government agencies about Trump's possible ties to Russia.*" [Durham Report] at 82.

(DE 331 at 11-12) (emphasis added). One would think that page 82 of the Durham Report contains newly discovered evidence to that effect. Not so. The full sentence from which Movants quote reads: "*First,* the Clinton Plan intelligence itself and on its face arguably suggested that private actors affiliated with the Clinton campaign *were seeking in 2016 to promote a false or exaggerated narrative to the public and to U.S. government agencies about Trump's possible ties to Russia*." Durham Report at 82 (emphasis added).

The "Clinton Plan intelligence" refers to Russian intelligence obtained by the United States that concluded that Ms. Clinton, in 2016, approved a plan to "vilify Donald Trump by stirring up a scandal claiming interference by the Russian security services." *Id*. at 81 (citing Letter from John Ratcliffe, DNI, to Sen. Lindsay Graham (Sept. 29, 2020)). I previously faulted Plaintiff's lawyers for relying on the contents of the Ratcliffe Letter in the Amended Complaint without noting that it was based on Russian intelligence and that the Letter warns: "The [intelligence community] does not know the accuracy of this allegation or the extent to which the Russian intelligence analysis may reflect exaggeration or fabrication." (Second Sanctions Order at 8 n.6).

8

The Durham Report then goes on to explain that the *unclassified* portion of the Report—the only portion available to the Parties and this Court—discusses how U.S. officials received and acted on the "Clinton Plan intelligence." Durham Report at 83. While the *classified* portion contains "the [Special Counsel] Office's efforts to verify or refute the key claims found in this intelligence." *Id*. Thus, the Durham Report as is available and presented by Movants, does not actually contain any newly discovered evidence on this point. And so goes all of Movants' contentions as to the significance of the Report on this Court's prior Orders.

Third, and in a similar vein, Movants' fail to clearly identify "newly discovered evidence" that existed "at the time of the trial." *See Jacob E. Decker & Sons*, 569 F.2d at 364. While the underlying facts contained in the Report existed at the time of this Courts' prior orders, Special Counsel Durham's conclusions and inferences based on those facts did not. Simply put, the Durham Report itself is not "newly discovered evidence" within the meaning of Rule 60(b)(2). And the Movants do not delineate any "newly discovered" fact with that Report.

I also reject Movants' argument that "[w]hile much of the information contained within the Durham Report may have been reported in the press or asserted in legal proceedings prior to the Durham Report's release, the existence of this *same information* in a report of an official government investigation is fundamentally different and new." (DE 336 at 9) (emphasis added). That is exactly the opposite of "newly discovered evidence."

With all of that in mind, I will now address Movants' arguments as to each of the three Orders that they seek vacated.

## B. ORDER ON MOTIONS TO DISMISS

Plaintiff seeks to revive four of the counts I dismissed: RICO (Count I), RICO Conspiracy (Count II), Injurious Falsehood (Count III), and Conspiracy to Commit Injurious Falsehood (Count IV) as to the non-federal Defendants. In the MTD Order, I dismissed all four with prejudice

9

because they were time barred by the statute of limitations and none stated a claim on the merits. I will now briefly outline the reasons for dismissal and, where appropriate, interject Plaintiff's arguments for why the Durham Report's "newly discovered evidence" should matter.

Starting with RICO, I held that Plaintiff's claims were time barred because the statute of limitations had run on October 2021, four years from when the injury was or should have been discovered. Plaintiff filed suit on March 24, 2022. I explained that Plaintiff's tweets and the Amended Complaint demonstrated that he was aware of the basis of his claims since at least 2017. (MTD Order at 25-26). Plaintiff never really disputed that (and doesn't now), banking instead on tolling the statute of limitations because (1) he was President, (2) a theory under the Clayton Act, (3) fraudulent concealment, or (4) the discovery rule. (*Id.* at 26). I rejected all four.

As to the first—and the *only* RICO, tolling ruling that Plaintiff seeks overturned—I held that given the several private lawsuits Plaintiff initiated during his Presidency, it "belies any claim that the equities require his novel theory of tolling . . . . " (*Id.* at 27). I also explained that *Clinton v Jones*, 520 U.S. 68 (1997), a case relied on by Plaintiff, arrived at the opposite conclusion than that which Plaintiff urged. (*Id.*).

Aside from a rehash of the same legal arguments under decades-old Supreme Court cases, Plaintiff argues that "the Durham Report now confirms, the FBI opened an investigation into President Trump without 'any actual evidence.'" (*See* DE 331 at 9-10) (citing Durham Report at 8).[4] Plaintiff then concludes that he "was obligated to let these initial investigations unfold in their

---

[4] The full sentence from which Movants quote reads:

> Indeed, based on the evidence gathered in the multiple exhaustive and costly federal investigations of these matters, including the instant investigation, *neither U.S. law enforcement nor the Intelligence Community appears to have possessed any actual evidence of collusion* in their holdings at the commencement of the Crossfire Hurricane investigation.

10

entirety before he could bring this suit" to avoid undermining his "belief in law and order and [sending] the wrong message to the Country."[5] (*Id*. at 11). I fail to see what one has to the with the other. In any event, the purported invalidity of the investigation does not change my determination that Plaintiff could have filed suit while President. Moreover, Special Counsel's Durham conclusion and Plaintiff's rationale does not constitute "newly discovered evidence." Seeing as Plaintiff's Rule 60(b)(2) motion as to his RICO claims fails to even get off the starting blocks, I end the inquiry here.

The story as to injurious falsehood is virtually the same. The vast majority of the statements at issue were well outside the the statute of limitations, March 24, 2020. (MTD Order at 45). Plaintiff adopts the same Rule 60(b)(2) argument rejected above to renew his equitable tolling theory. (DE 331 at 13). I reject it here too. As to a handful of statements that fell within the statute of limitations, I held that Plaintiff did not state a claim for injurious falsehood because (1) attacks on his fitness for political office do not constitute trade libel; (2) even if it did, he failed to plausibly allege any damage considering he won the 2016 presidential election; (3) he did not allege that any statements were made for the purpose of interfering with his property or economic interests; (4) he did not allege that any falsehood impacted third parties' desire to deal with him or resulted in pecuniary loss, or special damages; and (5) many of the statements are protected by the First Amendment. (MTD Order at 47-49).

---

Durham Report at 8 (emphasis added). The Durham Report also states that "there is no question that the FBI had an affirmative obligation to closely examine" information provided by the Australian government concerning statements made by a Trump Campaign policy advisor suggesting Russia's assistance to the campaign. Durham Report at 54. Durham, however, faults the FBI for opening a full, rather than preliminary, investigation.

[5] Ironically, one lawsuit that I cited in the MTD Order (*Trump v. Vance*, 140 S. Ct. 2412, 2420 (2020)) as an example of Plaintiff's ability to file lawsuits in his personal capacity while President, involved his attempt to quash a criminal subpoena issued by the Manhattan District Attorney's Office.

11

In an attempt to overturn my rulings on the third and fifth points, Plaintiff argues that the Durham Report "exposed the lies regarding President Trump's business dealings" and that it is "replete with examples of Defendants' malice." (DE 331 at 13). This is a prime example of Movants' failure to cleary state what specific fact is newly discovered. However, regardless of what the Durham Report does or doesn't say, Plaintiff *still* cannot cure his failure to allege that these purported falsehoods resulted in pecuniary loss, let alone special damages. As I said in the MTD Order, the Amended Complaint lacks the "crucial element" of special damages. (MTD Order at 49) (citing *Salit v. Ruden McCloskey, Smith Schuster & Russel, P.A.*, 742 So.2d 381, 388 (Fla. 4th DCA 1999)). This alone is fatal to Plaintiff's injurious falsehood claims.[6]

### C. SANCTIONS ORDERS

I imposed nearly $1 million in sanctions on Movants for filing, and doubling down on, a shotgun pleading that functioned as an abusive litigation tactic and was designed to further a political narrative. In doing so, I relied on three Eleventh Circuit decisions, with conduct less problematic than here, that affirmed an imposition of sanctions because of shotgun pleadings. (Second Sanctions Orders at 11) (citing *Jackson v. bank of Am., N.A.,* 898 F.3d 1348 (11th Cir. 2018); *Byrne v. Nezhat,* 261 F.3d 1075 (11th Cir. 2001); *Pelleteir v. Zweifel,* 921 F.2d 1465 (11th Cir. 1991)). I explained that cases like this are harmful to the rule of law, portray judges as partisans, and divert resources that should be directed to real harms and legitimate legal claims. (First Sanctions Order at 14).

I called Movants out for consistently misrepresenting and cherry-picking portions of public reports and filings to support a false factual narrative. (First Sanctions Order at 6-7; Second Sanctions Order at 14). To name only a few, Movants misrepresented the findings of the Special

---

[6] I considered the rest of the merits arguments as to RICO and injurious falsehood in light of Movants' supposedly "newly discovered evidence" and did not find that it changed the outcome. The MTD Order sufficiently explains why.

12

Counsel Robert Mueller's Report,[7] alleging, *inter alia*, that it "exonerate[d]" him. Yet in referring to obstruction of justice, the Mueller Report said "[w]hile this report does not conclude that the President committed a crime, it also does not exonerate him." (Second Sanctions Order at 15-16) (citation omitted). Similarly, Movants relied heavily on the DOJ Inspector General's Report into the Crossfire Hurricane Investigation,[8] without ackowleding its conclusion that the FBI opened the investigation "for an authorized purpose" and "with adequate factual predication" that had nothing to do with the Defendants or the Steele Dossier. (*Id*. at 16) (citation omitted).

Movants ignored the unfavorable parts of Special Counsel Durham's indictments. *See, e.g.*, (Indictment ¶ 36, *United States v. Danchenko*, No. 21-cr-00245, (E.D. Va. Nov. 3, 2021)) ("According to [Mr. Dolan], individuals affiliated with the Clinton Campaign did not direct, and were not aware of, the aforementioned meetings and activities with Danchenko and other Russian nationals.") (emphasis omitted). And in alleging that Plaintiff was "banned from different social media platforms, including Twitter" as a result of "the misinformation campaign waged by Hillary Clinton," (Amended Complaint ¶ 524 n.277), Movants at best made it up and at worst flatly lied. *See* Twitter Inc., *Permanent Suspension of @realDonaldTrump*, Twitter Blog (Jan 8, 2021),[9] (suspending Mr. Trump following January 6th attack on the Capitol because his tweets posed "the risk of further incitement of violence.").

Specific to Defendant Dolan, Movants disregarded Dolan's warning that he was a resident of New York, not Virginia. They alleged that Dolan was (1) the chairman of the DNC; (2) then

---

[7] 1 Robert S. Mueller, III, U.S. Dep't of Just., Report on the Investigation into Russian Interference in the 2016 Presidential Election (2019); 2 Robert S. Mueller, III, U.S. Dep't of Just., Report on the Investigation into Russian Interference in the 2016 Presidential Election (2019).

[8] U.S. Department of Justice Office of the Inspector General, Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation (2019).

[9] https://blog.twitter.com/en_us/topics/company/2020/suspension.

chairman of a national Democratic political organization; (2) a senior Clinton Campaign official; (3) and "an individual with initimate ties to the Clinton Campaign and one of its close associates." (Second Sanctions Order at 6) (citation omitted). All turned out to be false, even after being told so and given an opportunity to amend. As noted above, Movants misrepresented the Danchenko Indictment and excluded portions that directly contradicted Plaintiff's claim that Dolan conspired with Danchenko and others. (*See id*. at 7-8). I found that Movants failed to perform an adequate pre-filing inquiry, relying instead on conjecture, speculation, and guesswork. (*Id*. at 9.).

Setting aside Movants' factual misrepresentations and exaggerations, I also found that Movants put forth frivolous legal theories foreclosed by existing precedent. (First Sanctions Order at 9-13; Second Sanctions Order 19-21); *see also supra*, Intro to Part III and Part III.A.

Lastly, I found that this case is part of Mr. Trump's pattern of misusing the courts to serve a political purpose. The telltale signs being:

- Provocative and boastful rhetoric;
- A political narrative carried over from rallies;
- Attacks on political opponents and the news media;
- Disregard for legal principles and precedent; and
- Fundraising and payments to lawyers from political action committees.

(Second Sanctions Order at 33). In finding that Movants acted in bad faith, I invoked Rule 11 and this Court's inherent power to deter behavior that intereferes with the judiciary's ability to perform its constitutional duty.

The narrowness of Movants' Rule 60(b) Motion is itself indicative of why it should be denied. Movants argue that sanctions were inappropriate because the Durham Report shows that (1) it was not "implausible" or "absurd" that then FBI Director, James Comey, conspired with Defendant Clinton; (2) the FBI opened the Crossfire Hurricane investigation without "any actual

14

evidence of collusion"; and (3) certain allegations about Dolan were either made on a good-faith basis or are now known to be true. (DE 331 at 14-21).

Movants miss the point of the sanctions. First, they completely disregard the significance of Plaintiff's shotgun pleadings and their subsequent support of the same. In fact, it was in the context of explaining just that in the Second Sanctions Order that I concluded—after walking through Plaintiff's incoherent allegations for *four* pages—that it was categorically absurd to believe that Mr. Comey conspired with Ms. Clinton.[10] A shotgun pleading, especially one of this length and scope, was not an academic error—it had real-world, negative consequences for Defendants and this Court. Defendants were forced to spend an enormous amount of time and money untangling a web of largely irrelevant facts and frivolous legal conclusions. (*See* Second Sanctions Order, Appendix A). And this Court diverted an unusual amount of resources and time to properly adjudicate this dispute. The Eleventh Circuit has likened a shotgun pleading of this nature to obstruction of justice. (*See id*. at 14) (citing *Byrne*, 261 F.3d at 1131-32). That Movants pressed on, *even after* Defendants raised the relevant Eleventh Circuit caselaw in their initial motions to dismiss, is inexcusable. (*Id*. at 12).

Second, nothing changes my finding that Movants misrepresented and improperly exaggerated public documents. For instance, Movants pound the table on the Durham Report's purported

---

[10] The Durham Report does not support Plaintiff's allegation either. *See* Durham Report at 244 ("[T]he investigation [into Alfa Bank and Yotaphone allegations] assessed whether any FBI or other federal employee conspired with others to promote the allegations in order to benefit the Clinton campaign in a manner that would constitute a federal offense. The Office's investigation did not establish sufficient evidence that any FBI official or employee knowingly and intentionally participated in a conspiracy with others to promote the allegations, to falsify government records, to obstruct justice, or to cause the FBI to open an investigation into them as part of such a conspiracy."); *id*. at 266 ("During the Sussmann trial, both Elias and Mook said that the [Hillary for America] campaign did not authorize Sussmann to take the Alfa Bank allegations to the FBI. According to Elias and Mook, the campaign did not trust the FBI due to Comey's announcement related to the FBI's Midyear Exam investigation, regarding Hillary Clinton's use of a private e-mail server during her time as Secretary of State.").

15

conclusion that the FBI opened the Crossfire Hurricane investigation without any actual evidence. But that does not change Movants' misrepresentation of the IG Report. (*See* MTD Order at 5-6). Movants—and especially the lawyers—have a duty of candor to the Court. Third, Movants' frivolous legal theories remain frivolous. The fact that Movants are not attempting to revive the vast majority of Plaintiff's claims—even though the Durham Report "seismically alters the legal landscape"—only serves to bolster the sanctions. And fourth, considering the above, my finding that this case is part of Plaintiff's pattern of abusing the judicial system remains unchanged.

As to Dolan specifically, remember that Rule 11 sanctions are properly assessed (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; *or* (3) when the party files a pleading in bad faith for an improper purpose. *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001). I found that *all three* were met. (Second Sanctions Order at 4). Thus, even assuming, *arguendo*, that the Durham Report changes the analysis for the first prong, it does not (for the reasons just stated) for the rest.

Even if portions of the Durham Report constitute "newly discovered evidence," something that I seriously question, it cannot serve to retroactively cure Movants' reliance on conclusory allegations. *See Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694–95 (11th Cir. 1995) ("[T]he court's inquiry focuses only on the merits of the pleading gleaned from facts and law known or available to the attorney *at the time of filing* . . . . 'The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'").

Given how much Movants' Motion lacks merit, I see nothing more, let alone extraordinary, that would merit relief under Rule 60(b)(6).

## IV.  CONCLUSION

Movants pursued this lawsuit in bad faith for the improper purpose of dishonestly advancing a political narrative.  As I previously explained, Mr. Trump is a prolific and sophisticated litigant who is repeatedly using the courts to seek revenge on political adversaries.  This case is straight out of that playbook.  Nothing in the Durham Report changes that.

Accordingly, it is **ORDERED and ADJUDGED** that Movants' Motion for Indicative Ruling Based Upon New Evidence (DE 331) is **DENIED.**

**SIGNED** in Chambers at West Palm Beach, Florida this 15th day of September, 2023.

_____
Donald M. Middlebrooks
United States District Judge

cc:     Counsel of Record