Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 22-14102-CV-MIDDLEBROOKS

DONALD J. TRUMP,

    Plaintiff,

v.

HILLARY R. CLINTON, et al.,

    Defendants.

_____/

## ORDER GRANTING MOTION FOR SANCTIONS

Defendant Charles Dolan has moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Upon review of the motion (DE 268), Plaintiff's response (DE 270) and Defendant's reply (DE 276), and for the reasons explained below, the motion is granted. Accordingly, sanctions shall be awarded jointly and severally against Alina Habba, Michael T. Madaio, Habba Madaio & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group.

### I. BACKGROUND

<u>The Complaint</u>. In March 2022, Charles Dolan was among 29 defendants initially sued by Mr. Trump. (DE 1). He was identified as a former chairman of the DNC, a senior official in the Clinton Campaign, and a close associate of and advisor to Hillary Clinton. The Complaint alleged that in April 2016, Mr. Dolan participated in discussions about the creation of a "dossier" to smear Mr. Trump and disseminate false accusations to the media (Compl. ¶ 79), and at the direction of Ms. Clinton assisted in preparation of the dossier (Compl. ¶ 81). According to the Complaint, an allegation contained within the dossier that Mr. Trump engaged in salacious sexual activity in a

Moscow hotel was derived from Mr. Dolan. (Compl. ¶ 91). Mr. Dolan was sued for RICO conspiracy (Count II), conspiracy to commit injurious falsehood (Count IV), and conspiracy to commit malicious prosecution (Count VI).

The Warning Letter. On May 31, 2022, counsel for Mr. Dolan wrote the attorneys for Mr. Trump. They warned:

1. That Mr. Dolan had no role in any conspiracy related to the Steele dossier.

2. That Mr. Dolan was not a source for the allegations of sexual activity.

3. That Mr. Dolan had not been in contact with any defendant other than Igor Danchenko, and that Mr. Dolan's contacts with Mr. Danchenko involved business interests and help for a conference in Moscow.

4. That Mr. Dolan had never been chairman of the DNC.

5. That Ms. Clinton was on record through a spokesperson as stating she had no recollection of Mr. Dolan.

(DE 268-1).

The letter requested that Mr. Dolan not be named as a defendant in any forthcoming Amended Complaint. The letter further warned that if he were to be named, or if he was not dropped from the original Complaint, Rule 11 sanctions would be sought.

The Amended Complaint. On June 21, 2022, Plaintiff filed an Amended Complaint, as had been expected. It ballooned to 193 pages, 819 paragraphs and 31 defendants. With respect to Mr. Dolan, the allegations remained essentially the same. But in the Amended Complaint, Mr. Dolan was identified somewhat more vaguely as the former chairman of a "national Democratic political organization." (Am. Compl. ¶ 96). Elsewhere, he was described as a "senior Clinton Campaign Official." (Am. Compl. ¶ 4). Moreover, and somewhat inexplicably, Mr. Dolan was identified in the Amended Complaint as a citizen and resident of New York, despite a declaration that Mr. Dolan had provided to Plaintiff's lawyers explaining that Mr. Dolan was a resident of

2

Virginia. (Am. Compl. ¶ 20; DE 268-2).

The Sanctions Motion and Memorandum. On July 15, 2022, Mr. Dolan served on Mr. Trump's lawyers a motion seeking sanctions pursuant to Rule 11. The motion pointed out that the change in Mr. Dolan's purported title from "former chairman of the DNC" in the original Complaint to "former chairman of a national Democratic political organization," in the Amended Complaint did not solve the problems identified in the warning letter because Mr. Dolan had *never* been the chairman of *any* such organization. The motion further explained that Mr. Dolan's role in the Clinton Campaign was limited to knocking on doors as a volunteer. The motion also stated that Mr. Dolan had never been a resident of New York, that Mr. Dolan had told Plaintiff's lawyers so, and that the allegations of the Amended Complaint to that effect demonstrated a lack of diligence over something easily checked.

Mr. Dolan's motion for sanctions went on to place the Trump lawyers on notice of a critical failure in their claims, warning them that the Danchenko Indictment referenced throughout the Amended Complaint not only failed to support their allegations against Mr. Dolan but contradicted them. That warning continues to be unheeded.

## II. ANALYSIS

Rule 11 of the Federal Rules of Civil Procedure states in pertinent part:

> (b) *Representations to the Court.* By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
> 
> (1) it is not being presented for any improper purpose such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation;
> 
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing

3

> new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)-(3).

"Rule 11 deters attorneys and litigants from clogging federal courts with frivolous filings. It also rewards litigants who admit their mistakes within a 21-day safe harbor period—and penalizes those who refuse." *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F. 4th 1342, 1344 (11th Cir. 2022). The Eleventh Circuit requires a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

Rule 11 sanctions are properly assessed (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

Here, all three are true. In Section A of this Order, I explain why the Amended Complaint lacked a reasonable factual basis as to the allegations against Defendant Dolan. Then, in Section B, I explain why Plaintiff's legal arguments contained no reasonable chance of success. I have already done so, at great length and in great detail, in my Order granting Defendants' Motion to Dismiss. But I reiterate those fatal flaws here as relevant to the distinct Rule 11 inquiry. Finally, in Section C, I find that Plaintiff filed his pleadings for an improper purpose.

**A.      Factual Contentions**

I will start with the factual contentions. "'Rule 11 stresses the need for some prefiling

4

inquiry.'" *Mike Ousley Prods, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992). As such, it "imposes 'an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing,' and 'the applicable standard is one of reasonableness under the circumstances.'" *Walther v. McIntosh*, 572 F. App'x 881, 883 (11th Cir. 2014) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 551 (1991)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("Rule 11 . . . imposes an objective standard of reasonable inquiry . . . ."); *Turner v. Sungard Bus. Sys., Inc*., 91 F.3d 1418, 1422 (11th Cir. 1996) ("'[A] litigant's obligations with respect to the contents . . . [of pleadings or motions] . . . are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'" (quoting Fed. R. Civ. P. 11(b)-(c), advisory committee's note to 1993 amendment)). The Rule "is 'aimed at curbing abuses of the judicial system.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990).

The pleadings in this case contained factual allegations that were either knowingly false or made in reckless disregard for the truth. The following examples are indicative.

When suing someone it helps to know where they live, as this can have subject matter or personal jurisdiction significance. In this case for instance, Mr. Dolan argued that he engaged in no activities in Florida that made him susceptible to suit here. He filed an affidavit stating under oath that he lived in Virginia. His lawyers advised Mr. Trump's lawyers of that. Moreover, the summons in this case indicated an Arlington, Virginia address (DE 27) and the return of service indicated he was served there (DE 27-1). Yet the Amended Complaint alleged that Mr. Dolan was a resident of New York. The Trump lawyers' answer:

> [I]t must be noted that Charles Dolan is an incredibly common name, and Plaintiff's counsel's traditional search methods identified

5

> countless individuals with said name across the country, many of whom reside in New York.

(DE 270 at 10). While alone not of great significance, this response reflects the cavalier attitude towards facts demonstrated throughout the case. Plaintiff's narrative centered around the idea that Ms. Clinton orchestrated "a malicious conspiracy to disseminate patently false and injurious information about Donald J. Trump and his campaign, all in the hopes of destroying his life, his political career and rigging the 2016 Presidential Election . . . . " (Compl. ¶ 9). To advance this narrative, Plaintiff first described Mr. Dolan as chairman of the DNC (Compl. ¶ 78), then chairman of a national Democratic political organization (Am. Compl. ¶ 96), a senior Clinton Campaign official (*Id.* ¶ 4), and "an individual with intimate ties to the Clinton Campaign and one of its close associates." (*Id.* ¶ 96). The Amended Complaint alleges that Mr. Dolan engaged in a course of racketeering activity involving theft of trade secrets, obstruction of justice, and wire fraud (*Id.* ¶ 621); conspired to make false statements about Mr. Trump (*Id.* ¶ 658); and conspired to induce the FBI and DOJ to maliciously prosecute him (*Id.* ¶¶ 680-82).

Mr. Dolan's lawyers advised the Trump team that Mr. Dolan had never been the chairman of the DNC, or any other national Democratic political organization, was never a senior Clinton Campaign official, that Ms. Clinton had indicated she did not know him, and that his involvement in the campaign was limited to serving as a volunteer, knocking on doors in New Hampshire in the last week of the campaign. But Plaintiff's narrative remained unchanged.

Mr. Trump's lawyers claim "nearly all" of the allegations against Mr. Dolan were sourced directly from the Indictment brought against Igor Danchenko by special counsel John Durham. (DE 270-2 at 6). But this is simply not so. As was the practice throughout the Amended Complaint, Plaintiff cherry-picked portions which supported his narrative while ignoring those

6

that undermined or contradicted it.[1] Mr. Trump's lawyers persisted in this misrepresentation after being warned by the sanctions motion, and they doubled down on this falsehood in their response to the motion.

I routinely tell juries that an indictment brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else. *See* Eleventh Circuit Pattern Jury Instructions, Preliminary Instruction – Criminal Cases (2022). Here, Mr. Dolan was not the subject of the Indictment, but a fact witness. The allegations pertaining to his involvement with Mr. Danchenko should have been the starting point for a pre-suit investigation by Plaintiff, not the end.

Even more telling are the portions of the Indictment ignored by Plaintiff. The Indictment alleges that Mr. Dolan and others were planning a business conference to be held in Moscow on behalf of businessmen seeking to explore investments in Russia. (DE 270-2 ¶ 21). Mr. Danchenko was introduced to Mr. Dolan in connection with business activities. (*Id.* ¶ 18).

Significantly the Indictment alleges two other facts relevant to and, if true, fatal to Plaintiff's claim of conspiracy.

> According to [Mr. Dolan], individuals affiliated with the Clinton Campaign did not direct, and were not aware of, the aforementioned meetings and activities with Danchenko and other Russian nationals.
>
> \*\*\*
>
> According to [Mr. Dolan], he [Mr. Dolan] was not aware at the time of the specifics of Danchenko's 'project against Trump,' or that Danchenko's reporting would be provided to the FBI.

---

[1] The "sourced directly" claim is untrue. For example, the Indictment says: "In or about April 2016, Danchenko and [Mr. Dolan] engaged in discussions regarding potential business collaboration between PR Firm-1 and UK Investigative Firm-1 on issues related to Russia." (DE 270-2 ¶ 23). The Amended Complaint, however, states: "In late April 2016 Danchenko began having discussions with Dolan about a potential business collaboration between Orbis Ltd. and Kglobal to create a 'dossier' to smear Donald J. Trump and to disseminate the false accusations to the media." (Am. Compl. ¶ 96(c)).

7

(*Id*. ¶¶ 36, 52).

And with regard to the allegation about sexual activity, the Indictment alleges that Mr. Dolan and another individual were given a tour of a Moscow hotel in June 2016, told that Mr. Trump had previously stayed in the Presidential suite, and according to both Mr. Dolan and the other individual, the staff member who gave the tour did not mention any sexual or salacious activity. (*Id*. ¶¶ 60-61). The Indictment does not allege that the information concerning sexual activity was provided by Mr. Dolan.

The May 31, 2022 warning letter told the Trump lawyers that Mr. Dolan had been questioned by the FBI on multiple occasions, that the Danchenko Indictment detailed his contacts with Mr. Danchenko but did not indicate he "discussed any sexual rumors with Mr. Danchenko -- because he did not." (DE 268-1 at 2). The Indictment confirms that Mr. Dolan spoke to the FBI, and not only was he not charged with any falsehood, but his statements are included within the Indictment. The Indictment contradicts rather than supports Plaintiff's allegations against Mr. Dolan. Far from being "sourced directly" and cited "word-for-word," (DE 270 at 5), Plaintiff's use of the Indictment is nothing short of a deliberate disregard of the truth or falsity of their claims. This is a textbook example of sanctionable conduct under Rule 11.

Rather than express any regret, Plaintiff doubled down on his claims: "Plaintiff's allegation that Defendant was the source of the salacious sexual activity rumor has a legitimate factual basis and is based upon a well-reasoned theory that may well be proven correct during the [Office of Special Counsel's] upcoming trial of Danchenko." (DE 270 at 10).

It was never to be. In the Danchenko trial, Mr. Dolan was called as a witness by the government about matters unrelated to the Ritz Carlton rumors. The government never alleged that Mr. Dolan was a source for the Ritz Carlton story. *See* Order, *United States v. Igor Y.*

8

*Danchenko*, Case No. 21-cr-00245-AJT at 5 (Oct. 4, 2022). And Mr. Danchenko was ultimately acquitted by the jury.

In short, I find that Mr. Trump's lawyers were warned about the lack of foundation for their factual contentions, turned a blind eye towards information in their possession, and misrepresented the Danchenko Indictment they claim as their primary support. The lawyers failed to conduct a pre-filing inquiry into the allegations against Mr. Dolan and have continued to advance Plaintiff's false claims based upon nothing but conjecture, speculation, and guesswork. This is precisely the conduct Rule 11 is intended to deter. *See Cooter & Gell*, 496 U.S. at 393.

**B.     Legal Theories**

Rule 11 sanctions are also warranted when a plaintiff's legal theories have no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law. *Massengale*, 267 F.3d at 1301. Plaintiff's Amended Complaint is 193 pages in length, with 819 numbered paragraphs, 14 counts, and it names 31 defendants including Charles Dolan. As I stated in my Order entered September 8, 2022 (DE 267), none of these counts stated a claim upon which relief could be granted. Additionally, several of the defendants were not subject to personal jurisdiction, and there was not subject matter jurisdiction over the Federal Defendants. The Amended Complaint was, in its entirety, frivolous. Multiple substantive defects precluded Plaintiff from proceeding on any of the theories he advanced. Mr. Dolan was named in three counts: RICO conspiracy (Count II); Conspiracy to Commit Injurious Falsehood (Count IV); and Conspiracy to Commit Malicious Prosecution (Count VI).

Starting with Count II, the RICO conspiracy: "RICO" is the acronym for the Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961-68. Congress described RICO as "an act designed to prevent

9

known mobsters from infiltrating legitimate businesses."[2] In addition to criminal provisions, RICO includes a civil remedy which, distilled to its essence, requires a plaintiff to prove (1) a violation of a § 1962 prohibited act; (2) injury to business or property, and (3) that the defendant's violation caused the injury. *See RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 325 (2016).

In the RICO count of the Amended Complaint, Plaintiff realleged the previous 619 paragraphs, and it was a mystery who he intended to sue. In the caption to Count II, he named 22 defendants but in the prayer for relief for that count 28 were named. Added were HF ACC, Inc., the DNC Services Corporations, James Comey, Peter Strzok, Lisa Page, and Andrew McCabe. (Am. Compl. ¶ 633). Whoever he intended to sue, Plaintiff alleged that each of them "knew about and agreed to facilitate the Enterprise's scheme to harm the Plaintiff's political career, tarnish his electability, and undermine his ability to effectively govern as the President of the United States . . . ." (Am. Compl. ¶ 627).

The RICO conspiracy claims were entirely conclusory. Moreover, there is no standing to bring a RICO conspiracy claim unless injury resulted from violation of a substantive provision of RICO. *See Beck v. Prupis*, 529 U.S. 494, 495 (2000); *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011). Here Plaintiff could not state a RICO claim without two predicate acts, and he failed to plausibly allege even one. He also failed to adequately allege standing, a pattern of racketeering activity, or the existence of an enterprise. Moreover, the claims were barred by the statute of limitations. In short, Plaintiff's RICO claim failed at every step of analysis. (*See* DE 267 at 23-43).

Two Eleventh Circuit decisions are particularly relevant. Both involve the frivolous use of

---

[2] Jed S. Rakoff & Howard W. Goldstein, RICO Civil and Criminal Law and Strategy, § 1.01, at 1-4 (2000 ed.).

10

civil RICO. In *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991),[3] the Court of Appeals reversed the denial of a Rule 11 sanctions motion in a civil RICO case. Analyzing in detail the amended complaint in that case, the Court of Appeals concluded that the plaintiff failed to establish any of the required predicate acts, to show any continuing relationship or pattern of acts, or any injury flowing from those acts. *Id.* at 1496-1500. Concluding that each of the counts in the amended complaint were objectively frivolous when filed, the court found it apparent that the case was brought to harass the defendants.

> Our conclusion is buttressed by the manner in which [plaintiff] pled his case in the district court and briefed it on appeal . . . . [These] are quintessential 'shotgun' pleadings, replete with factual allegations that could not possibly be material to any of the causes of action they assert. Each count incorporates all of these factual allegations and states, further, that it is based on the conduct in the complaint attributable to [defendant] and 'those acting in concert with him.' Anyone schooled in the law who read these complaints, however, would know that many of the facts alleged could not possibly be material to all of the counts.

*Pelletier,* 921 F.2d at 1518. The appellate court found the amended complaint was conclusory, baseless and without any merit. In deciding that the claim was prosecuted in bad faith, the court rejected the thought that it might have been the "product of incompetent lawyering, and thus excusable, rather than" a tool of harassment, because the plaintiff was skilled in the law and had been warned he was likely to run afoul of Rule 11. *Id.* at 1519. The Court concluded:

> We think that imposing sanctions in this case would serve the dual

---

[3] *Pelletier* and *Byrne* (cited in the next paragraph) were abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008) (holding "plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."). I do not rely on *Pelletier* and *Byrne* as they relate to mail fraud. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358, 1360 (11th Cir. 2018) (citing *Pelletier* and *Byrne* as good law for purposes of sanctions resulting from improper pleading). A more detailed analysis of why Plaintiff lacked standing to bring his RICO claim is set forth in my Order granting Defendants' Motion to Dismiss. (DE 267 at 42-43).

11

> purpose of deterring the filing of frivolous claims and defenses while not chilling attorneys' legitimate enthusiasm and creativity in advancing legal and factual theories. At a time when the federal courts -- which are a scarce dispute resolution resource, indeed -- are straining under the pressure of an ever-increasing caseload, we simply cannot tolerate this type of litigation. Particularly with regard to civil RICO claims, plaintiffs must *stop and think* before filing them.

*Id*. at 1522 (emphasis in original).[4]

Similarly in *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001), the Court analyzed the elements of a RICO claim and the plaintiff's standing to raise the claim:

> Our review of the district court's award of sanctions necessarily begins with an analysis of the complaint, here the amended complaint. We note that if the facts as pled failed to state a claim for relief, it was irrelevant whether [plaintiff's counsel] conducted the requisite Rule 11 pre-filing factual investigation.

*Id.* at 1107. The court affirmed a $400,000 sanction against counsel, finding that the expansion of a simple "garden variety medical malpractice" case to include RICO and other baseless claims was frivolous from the outset and doomed to fail. *Id*. at 1115.

Aside from RICO, Plaintiff advanced other baseless claims against Mr. Dolan. In Count IV, the Amended Complaint alleged conspiracy to commit injurious falsehood. Once again, while the caption named 22 defendants, the prayer for relief named 24, adding HFACC, Inc., the DNC Services Corporation, and Debbie Wasserman Schultz. This count realleged the previous 656 paragraphs of the Amended Complaint and stated:

> Each of the Defendants executed one or more acts in furtherance of the conspiracy . . . and committed overt acts to harm the Plaintiff in furtherance of the conspiracy. In this regard, the Defendants conspired to create a false narrative that Plaintiff was colluding with

---

[4] In *Pelletier*, the Court not only reversed the district court's denial of Rule 11 sanctions and remanded for a determination of an appropriate amount, but also determined that the appeal was frivolous on the merits and awarded double costs and a reasonable attorney's fee pursuant to Rule 38 of the Federal Rules of Appellate Procedure.

>           Russia through their dissemination of false and damaging
>           statements.

(Am. Compl. ¶¶ 660-61).

I sifted through all of the paragraphs of the Amended Complaint searching for an injurious falsehood. Almost all of the statements were barred by Florida's two-year statute of limitations. Moreover, none of the elements of the tort of injurious falsehood, which involves the intentional interference with property interests, were alleged. Special damages were not alleged, and the damages sought were not recoverable. And without an underlying injurious falsehood claim, a civil action for conspiracy to commit injurious falsehood does not exist. (*See* DE 267 at 43-49).

Count VI was similarly flawed. There, Plaintiff alleged that Mr. Dolan, Ms. Clinton and others conspired with the Director of the FBI, James Comey; Deputy Director McCabe; Mr. Trump's Deputy Attorney General, Rod Rosenstein; two lawyers for the FBI, Kevin Clinesmith and Lisa Page; and an FBI agent, Peter Strzok to maliciously prosecute Mr. Trump. Mr. Trump, however, was never prosecuted. He could not state a malicious prosecution claim without a judicial proceeding and a termination in his favor. The Amended Complaint misconstrued the law and misrepresented both the Mueller Report and the Department of Justice Inspector General's Report. Without an underlying malicious prosecution claim, a conspiracy to commit malicious prosecution cannot be brought. (*See* DE 267 at 50-52).

The foregoing is not an exhaustive list of the problems with Plaintiff's legal theories, but they amply demonstrate how unreasonable and meritless the claims were as they pertained to Mr. Dolan. None of the claims against him—or any other defendant for that matter—had any chance of success, and this weighs strongly in favor of imposing Rule 11 sanctions.

### C. Improper Purpose

Not just initiated by a shotgun pleading, this was a shotgun lawsuit. Thirty-one individuals and organizations were summoned to court, forced to hire lawyers to defend against frivolous claims. The only common thread against them was Mr. Trump's animus.

Plaintiff deliberately misrepresented public documents by selectively using some portions while omitting other information including findings and conclusions that contradicted his narrative. This occurred with the Danchenko Indictment, the Department of Justice Inspector General's Report for Operation Hurricane, and the Mueller Report. It was too frequent to be accidental.

Every claim was frivolous, most barred by settled, well-established existing law. These were political grievances masquerading as legal claims. This cannot be attributed to incompetent lawyering. It was a deliberate use of the judicial system to pursue a political agenda.

But the courts are not intended for performative litigation for purposes of fundraising and political statements. *See Saltany v. Reagan*, 886 F.2d. 438 (D.C. Cir. 1989).[5] It is harmful to the rule of law, portrays judges as partisans, and diverts resources that should be directed to real harms and legitimate legal claims. The judiciary should not countenance this behavior and it should be deterred by significant sanctions.

### D. Remedy

Federal Rule of Civil Procedure Rule 11(c) provides:

---

[5] In *Saltany*, Libyan citizens sued President Reagan, Prime Minister Thatcher and others for injuries, death and property loss sustained in a United States air strike. The district court denied sanctions finding that although plaintiff's counsel "surely knew" the case offered no hope of success, sanctions should be denied to keep the courthouse door open to suits brought as a public statement of protest. The D.C. Circuit reversed and directed sanctions to be imposed stating: "We do not conceive it a proper function of a federal court to serve as a forum for 'protests,' to the detriment of parties with serious disputes waiting to be heard." *Saltany*, 886 F.2d at 439.

>    (1) *In General*. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>    (2) *Motion for Sanctions* . . . If warranted, the court may award the prevailing party, the reasonable expenses, including attorney's fees, incurred for the motion.
>
>                                           ∗∗∗
>
>    (4) *Nature of a Sanction*. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

The central purpose of Rule 11 "is to deter baseless filings in the [d]istrict [c]ourt," and "any interpretation" of the rule "must give effect to the rule's central goal of deterrence." *Cooter & Gell*, 496 U.S. at 393.  The Advisory Committee Notes and Commentary ("Commentary") to the rule also emphasizes this focus: "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty."  Fed. R. Civ. P. 11(b)-(c), advisory committee's note to 1993 amendment.

However, the Commentary goes on to state that under unusual circumstances, particularly where an improper purpose is found, deterrence may be ineffective unless the sanction not only requires a monetary payment but also directs some portion to be made to those injured by the violation including, if requested by motion, attorney's fees and costs directly and unavoidably

15

caused by the violation.

    Factors to be considered in determining an appropriate sanction include:

- Whether the conduct was willful or negligent.

- Whether it was part of a pattern or an isolated event.

- Whether it affected the entire pleading, or only one particular count or defense.

- Whether the person engaged in similar conduct in other litigation.

- Whether it was intended to injure.

- What effect it had on the litigation process in time or expense.

- Whether the responsible person was trained in the law.

- What amount, given the resources of the person, would be required to deter that person from repetition.

- What amount is needed to deter similar activity by other litigants.

*Id.*

    Any sanction should be no more severe than reasonably necessary to deter repetition of the conduct or comparable conduct by similarly situated persons. A sanction should not be hollow and must not amount to mere gesture; its bite must be real. That said, sanctions orders must not involve amounts that are so large that they fly in the face of common sense. A sanction that a party "cannot pay does not vindicate the court's authority," nor provide deterrence. *See Martin v. Automobili Lamborghini Exclusive Inc.*, 307 F.3d 1332, 1336 (11th Cir. 2002) (affirming but remanding joint and several sanction of one and a half million dollars for a determination of each person's liability, taking into consideration ability to pay).

    The Eleventh Circuit has said that "[i]mposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits." *Donaldson v. Clark*,

819 F.2d 1551, 1557 (11th Cir. 1987) (*en banc*).[6]

Here I find that both a financial penalty and payment of attorney's fees and costs to Mr. Dolan are necessary.

The conduct was willful, not simply negligent. Each of the prongs of Rule 11 are met. Thirty-one defendants were sued and forced to hire counsel, incurring substantial fees. Moreover, it was necessary for the United States to be substituted for the Federal Defendants and represented by the Department of Justice and U.S. Attorney's Office at taxpayer expense. The entire pleading, each of the 14 counts, was affected.

The failings of the original Complaint were basic and obvious. And when those failings were identified in motions to dismiss, the Amended Complaint simply added arguments in an attempt to skirt the RICO statute of limitations, and two more defendants were named—Mr. Trump's former deputy Attorney General, and also a California Congressman whom Mr. Trump delights in insulting. The choice of defendants, combined with the lack of any viable legal theories of liability, reflect an intention to injure rather than to redress legal harm.

Undeterred by Mr. Dolan's Rule 11 warning letter and motion, two rounds of briefing by multiple defendants, and my detailed Order identifying the deficiencies of the Amended Complaint, Ms. Habba appeared on Fox News Hannity and continued to advance Plaintiff's claims:

---

[6] In *Byrne v. Nezhat*, *supra*, a monetary sanction totaling $191,439.11 was affirmed against counsel for the inclusion of a meritless multi-count RICO claim in what should have been a simple medical malpractice claim. 261 F.3d at 1099 n.54; *see also, Ortho Pharmaceutical Corp. v. Sona Distributors*, 847 F.2d 1512, 1519 (11th Cir. 1988) (affirming monetary sanction of $35,851.55 against counsel for filing groundless motion to dismiss); *Johnson v. 27th Ave. Caraf., Inc.*, 9 F.4th 1300, 1316-18 (11th Cir. 2021) (affirming sanctions against a party including $6,000 financial penalty, reduced from $59,900 based on financial consideration, 50 hours of community service per year for three years, and an injunction against filing ADA complaints without permission from the court.).

> [W]hen you have a Clinton judge, as we did here, Judge Middlebrooks, who I had asked to recuse himself but insisted that he didn't need to, he was going to be impartial, and then he proceeds to write a 65-page scathing order where he basically ignored every factual basis which was backed up by indictments, by investigations, the Mueller Report, et cetera, et cetera, et cetera, not to mention [Special Counsel John] Durham and all the testimony we heard there, we get dismissed.

Transcript from FOX: Hannity, WLNR 28709447, Sept. 10, 2022.

Ms. Habba then emphasized her own role:

> I have to share with you a story, Sean, that I have not shared with anybody . . . The former President looked at me and he told me: 'You know what, Alina, you're not going to win, you can't win, just get rid of it, don't do the case.' And I said 'no, we have to fight, it's not right what happened.' And you know, he was right, and it's a sad day for me personally, because I fought him on it and I should have listened, but I don't want to lose hope in our system, I don't. So, you know, I'm deciding whether we're going to appeal it.

*Id*.

So who is responsible for this case and others like it? The rule of law is undermined by the toxic combination of political fundraising with legal fees paid by political action committees, reckless and factually untrue statements by lawyers at rallies and in the media, and efforts to advance a political narrative through lawsuits without factual basis or any cognizable legal theory. Lawyers are enabling this behavior and I am pessimistic that Rule 11 alone can effectively stem this abuse. Aspects may be beyond the purview of the judiciary, requiring attention of the Bar and disciplinary authorities. Additional sanctions may be appropriate. (DE 280). But legal filings like those at issue here should be sanctioned under Rule 11, both to penalize this conduct and deter similar conduct by these lawyers and others.

## CONCLUSION

For the forgoing reasons, and having carefully considered the record, the written

submissions of the Parties, and applicable law, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant Charles Dolan's Motion for Rule 11 Sanctions (DE 268) is **GRANTED.**

2. Plaintiff's counsel Alina Habba, Michael T. Madaio, Habba Madaio & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group, shall jointly and severally pay a monetary sanction of $50,000 into the registry of the Court.[7]

3. Plaintiff's counsel Alina Habba, Michael T. Madaio, Habba Madaio & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group, shall jointly and severally pay to Charles Dolan fees and costs totaling $16,274.23.

**SIGNED** in chambers at West Palm Beach, Florida this 10th day of November, 2022.

Donald M. Middlebrooks
United States District Judge

cc:   counsel of record

---

[7] "[S]anctions must never be hollow gestures: their bite must be real." *Martin v. Automobile Lamborghini Exclusive, Inc.*, 307 F. 3d 1332, 1336 (11th Cir. 2002). But for the bite to be real it must be an amount a person can pay. *Id.* I believe the monetary sanctions imposed here are well within these lawyers' ability to pay, and therefore I have not thought it necessary to conduct an intrusive inquiry into their finances. However, should any lawyer or law firm believe that the amount would seriously jeopardize their financial status, *see, e.g., Baker v Alderman*, 158 F. 3d 516 (11th Cir. 1998), that individual or firm should file within ten (10) days of this Order, under seal, a verified statement of net worth which includes assets and liabilities. In the event of such a filing, the obligation of that lawyer or law firm will be tolled until further order of the court.